```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```
_____

RACHEL C. WESTBROOK,            )
                                )
    Plaintiff,                  )
                                )
v.                              )        No. <u>07-2657 Ma/P</u>
                                )
CHARLIE SCIARA & SON PRODUCE    )
CO., INC. and PETER C. SCIARA,  )
                                )
    Defendants.                 )

_____

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' FINANCIAL RECORDS AND INFORMATION**
_____

Before the court by order of reference is plaintiff Rachel C. Westbrook's Motion to Compel Defendants' Financial Records and Information, filed on January 9, 2008. (D.E. 19). On January 28, 2008, defendants Charlie Sciara & Son Produce Co., Inc. ("Sciara Produce") and Peter C. Sciara filed their response in opposition. Westbrook filed her reply on January 29, 2008. On January 30, 2008, defendants filed a Motion for Leave to File a Sur-Response, which the court granted on February 6, 2008. Defendants filed their sur-response the same day.

For the reasons below, the motion to compel is GRANTED in part and DENIED in part. The cross motions for attorney's fees and expenses are DENIED.

### I. BACKGROUND

This motion arises from a hostile work environment claim

brought under 42 U.S.C. § 1981, the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-202 et seq., and Tennessee common law. Westbrook was employed by Sciara Produce as an intern through the University of Memphis for eight months beginning on November 6, 2006. Sciara Produce is a Tennessee corporation doing business in Memphis, Tennessee. Peter C. Sciara is the CEO of Sciara Produce. Westbrook, who is Caucasian, alleges that she was subjected to racial harassment and discrimination and unlawful discharge due to her association with an African-American male. Westbrook seeks, among other things, back pay, compensatory damages, and punitive damages.

On November 21, 2007, Westbrook served the defendants with her request for production of documents seeking financial information relating to the defendants' net worth. Specifically, Westbrook requested Sciara's federal tax returns from 2005 to the present as well as monthly statements for all checking, savings, and investment accounts held by him from 2005 to the present. Westbrook requested that Sciara Produce disclose its federal tax returns, annual financial reports, profit and loss statements, and balance sheets from 2005 to the present. Defendants objected to these requests on relevance grounds, and Sciara further objected because the information requested included joint accounts held with his wife, who is not a party to this case.

In her present motion, Westbrook argues that the defendants'

objections to discovery are without merit and that financial records of this kind are discoverable. She also states that she is willing to enter into a protective order to maintain the confidentiality of the records. In addition, Westbrook contends that the defendants' offer to provide affidavits stating their net worth is inadequate, and that she should be allowed to discover the underlying financial information and data. Westbrook also asks that the court order the defendants to reimburse her for attorney's fees incurred as a result of bringing this motion.

The defendants argue that the information Westbrook seeks is irrelevant, overly broad, and otherwise not discoverable. The defendants assert that providing affidavits indicating their net worth should be sufficient and that discovery of past financial records is overly broad. Additionally, the defendants contend that they are entitled to a protective order limiting review of their financial information to counsel and their staff. The defendants claim that they would be harmed if Westbrook had access to their financial records because Sciara Produce is a privately owned company and its financial information has only been viewed by Sciara, his wife, and their financial advisors. The defendants request that the court deny Westbrook's motion and award them attorney's fees.

## II. ANALYSIS

**A. Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) allows for the discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevancy for discovery purposes is construed broadly. Discoverable evidence need not be admissible at trial; rather, material is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Id. "Nevertheless, discovery does have 'ultimate and necessary boundaries,'" Miller v. Fed. Express Corp., 186 F.R.D. 376, 383 (W.D. Tenn. 1999) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)), "and 'it is well established that the scope of discovery is within the sound discretion of the trial court.'" Id. (quoting Coleman v. Am. Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994)). A court need not compel discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

Once an objection to the relevance of the information sought is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action. Allen v. Howmedica Leibinger, 190 F.R.D. 518, 522 (W.D. Tenn. 1999). If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules. United Oil Co. V. Parts Assocs., Inc., 227

F.R.D. 404 at 411 (D. Md. 2005); MJS Janitorial v. Kimco Corp., No. 03-2102, 2004 WL 2905409, at *6 (W.D. Tenn. Apr. 19, 2004); see also Fed. R. Civ. P. 26(b)(2)(i), (iii).

Evidence of a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff seeks punitive damages. D'Onofrio v. SFX Sports Group, Inc., 247 F.R.D. 43, 52-53 (D.D.C. 2008); Lane v. Capital Acquisitions, 242 F.R.D. 667, 670 (S.D. Fla. 2005); Sonnino v. Univ. of Kan. Hosp. Auth., 220 F.R.D. 633, 654 (D. Kan. 2004); United States v. Matusoff Rental Co., 204 F.R.D. 396, 399 (S.D. Ohio 2001). The majority of courts have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages. Matusoff, 204 F.R.D. at 399; Audiotext Commc'ns Network, Inc. v. US Telecom, Inc., No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995); Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 1990).

The parties agree that some discovery is warranted relating to the defendants' net worth for purposes of Westbrook's claim for punitive damages. They disagree, however, as to the scope of that discovery. Westbrook claims that she is entitled to discovery of federal tax returns, monthly statements for all checking, savings, and investment accounts from 2005 to the present, annual financial

reports, profit and loss statements, and balance sheets from 2005 to the present. Defendants argue that they should only be required to produce affidavits of their net worth.

Under Hodges v. S.C. Toof & Co., the "defendant's financial affairs, financial condition, *and* net worth" are relevant to the punitive damages inquiry. Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992) (emphasis added) (setting forth nine factors for the factfinder to consider in determining the amount of punitive damages); see also Harper v. BP Exploration & Oil, Inc., 134 F.3d 371, 1998 WL 45487, at *6 (6th Cir. Jan. 27, 1998) (applying Hodges to claim brought under 42 U.S.C. § 1981). Thus, defendants' financial affairs and condition – in addition to their net worth – are relevant to punitive damages, and therefore the defendants must produce more than just affidavits of their net worth. See Audiotext, 1995 WL 625962, at *4; see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-2164-MLB-DWB, 2007 WL 950282, at *14 (D. Kan. March 26, 2007); Learjet Inc. v. MPC Prods. Corp., No. 05-1074-MLB-DWB, 2007 WL 2289836, at *4 (D. Kan. Aug. 8, 2007).

On the other hand, the scope of discovery should be limited to the defendant's *current* financial condition and net worth. S. Cal. Hous. Rights Ctr. v. Krug, No. CV06-1420SJOJCX, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006); see also Learjet, 2007 WL 2287826, at *4 (limiting discovery to most recent year); Heartland Surgical,

-6-

2007 WL 950282, at *15 (same); Krug, 2006 WL 4122148, at *2 (limiting discovery to two year period); Lane, 242 F.R.D. 667, 670 (same); Sonnino, 220 F.R.D. at 654-55 (same). Therefore, the court will allow discovery of information relating to the defendants' financial condition, financial affairs, and net worth for the period of January 1, 2007 to the present.

With respect to Sciara's and Sciara Produce's tax returns, although some circuits have adopted a heightened relevancy standard or two-prong test for determining whether discovery of tax returns is permissible, the Sixth Circuit has not adopted such a standard or test. DeMarco v. C & L Masonry, 891 F.2d 1236, 1240 (6th Cir. 1998) (holding that tax returns are not "confidential" in the legal sense and stating that "tax returns and other financial information enjoy no special privilege from disclosure"); see also EEOC v. SCI Tenn. Funeral Servs., Inc., No. 05-2718, at *5-7 (W.D. Tenn. June 30, 2006); Medtronic Sofamor Daneck, Inc. v. Michelson, No. 01-2373, at 9-10 (W.D. Tenn. Oct. 25, 2002). Thus, the appropriate analysis is whether the tax returns are relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).

The court finds that the defendants' federal tax returns that relate to the period of January 1, 2007 to the present, are relevant to Westbrook's punitive damages claim and are subject to discovery. See Johnson v. Kraft Foods N. Am., 236 F.R.D. 535, 539-40 (D. Kan. 2006) (ordering production of tax returns under two-

prong test); Harvest Meat Co. v. Robert Dairy Co., No. 05-2122-KHV, 2005 WL 3470340, at *4 (D. Kan. Dec. 19, 2005) (same); Interstate Narrow Fabrics, Inc. v. Century USA, Inc., No. 1:02CV00146, 2004 WL 444570, at *3 (M.D.N.C. Feb. 24, 2004) (same); Ratts v. Bd. of County Comm'rs, No. 97-4240-DES, 1999 WL 965723, at *2-3 (D. Kan. Sept. 30, 1999) (same).

The court also notes that the fact that Sciara's financial accounts may be jointly owned with his wife or that his tax returns may be filed jointly with his wife is not a barrier to discovery. Sciara, however, may redact any portions of the tax returns and financial information that pertain solely to his wife prior to producing these documents to Westbrook. See Johnson, 236 F.R.D. at 546 (D. Kan. 2006).

In sum, Sciara shall produce his monthly statements (or quarterly statements if monthly statements are not available) for all checking, savings, and investment accounts that relate to the period of January 1, 2007 to the present, as well as his federal tax returns that relate to the period of January 1, 2007 to the present (with appropriate redactions). Sciara Produce shall produce its federal tax returns that relate to the period of January 1, 2007 to the present, and its financial reports, profit and loss statements, and balance sheets that relate to the period of January 1, 2007 to the present.

**B. Protective Order**

Federal Rule of Civil Procedure 26 provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). To determine whether good cause exists, and the proper level of protection, the court "must balance the requesting party's need for discovery against the resisting party's claimed harm that will result from disclosure." In re Michael Wilson & Partners, 2007 WL 3268475, at *2; A Major Difference, Inc. v. Wellspring Prods., LLC, 243 F.R.D. 415, 416 (D. Colo. 2006); C.A. Muer Corp. v. Big River Fish Co., No. Civ.A. 97-5402, 1998 WL 488007, at *2 (E.D. Pa. Aug. 10, 1998).

The parties agree that a protective order should be entered in this case to protect the confidentiality of the defendants' financial information. The defendants, however, claim that the protective order should limit review to "attorneys' eyes only." Westbrook, on the other hand, claims that such a restriction would improperly limit her participation in the litigation of her case. In general, courts utilize "attorneys' eyes only" protective orders when especially sensitive information is at issue or the information is to be provided to a competitor. See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Bottling Group, L.L.C., No. 07-2315-JAR, 2008 WL 234326, at *4 (D. Kan. Jan. 28, 2008) (ordering financial information to be designated as "Highly Confidential-Attorneys' Eyes Only" for discovery between competitors); In re

Michael Wilson, 2007 WL 3268475, at *3 (finding that a standard protective order was sufficient because parties were not direct competitors); Netquote, Inc. v. Byrd, No. 07-cv-00630-DME-MEH, 2007 WL 2438947, at *1, 4 (D. Colo. Aug. 23, 2007) (limiting discovery of financial information and customer lists between competitors to "attorney-eyes-only"); Avocent Redmond Corp. v. Rose Elecs., Inc., 242 F.R.D. 574, 576 (W.D. Wash. 2007) (ordering "attorneys eyes only" designation for financial and proprietary information produced between competitors); Gaymar Indus., Inc. v. Cloud Nine, LLC, No. 1:06 CV 62 TC, 2007 WL 582948, at *3-4 (D. Utah Feb. 20, 2007) (ordering "Confidential-Attorneys' Eyes Only" designation for technical and financial information discovery between competitors); Visto Corp. v. Seven Networks, Inc., 2:03-CV-333-TJW, 2006 WL 3741891, at *6 (E.D. Tex. Dec. 19, 1006) (placing computer source code under "attorneys' eyes only" designation); Blanchard and Co., Inc. v. Barrick Gold Corp., No. 02-3721, 2004 WL 737485, at *2, 15 (E.D. La. April 5, 2004) (applying "Highly Confidential," i.e. "outside experts and attorney's eyes only" designation to confidential and proprietary commercial information produced to a competitor).

In this case, the court finds that an attorneys' eyes only protective order is not warranted under the circumstances. The information sought does not contain trade secrets or other proprietary information, nor are the parties competitors.

Moreover, the defendants have not argued (much less presented any evidence) that Westbrook has demonstrated a propensity to release confidential information to third parties. Therefore, the court finds that a standard protective order will sufficiently preserve the confidentiality of the defendants' financial information without imposing an undue restriction on Westbrook's access to the information.

### III. CONCLUSION

For the reasons above, the motion to compel is GRANTED in part and DENIED in part. Within three (3) days from the date of this order, Westbrook shall provide the defendants with a proposed protective order for review, and once approved by the defendants, shall submit the proposed protective order to the Magistrate Judge for review and approval. The defendants shall produce documents in compliance with this order within eleven (11) days after the court enters the protective order. The parties' cross motions for attorneys fees and expenses are DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 27, 2008
Date